# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES O. DEMENTE,

     Plaintiff,

vs.                            No. CIV 17-0321 JB/JHR

GEICO GENERAL INSURANCE
COMPANY; VICTORIA DILUCENTE;
ANTHONY DILUCENTE; and- DERICA
DUNN-GROSS,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Derica Dunn-Gross' Second Motion to Dismiss for Insufficient Process, filed April 18, 2017 (Doc. 12) ("Service of Process MTD"); and (ii) Defendant GEICO General Insurance Company's Motion to Dismiss with Prejudice Under Rule 12(b) and Memorandum in Support Thereof, filed April 21, 2017 (Doc. 13)("MTD").  The Court held a hearing on July 27, 2017.  The primary issues are: (i) whether the Court should dismiss Plaintiff James Demente's claims against Defendant Derica Dunn-Gross, because Demente's summons on Dunn-Gross lacked the United States District Court of New Mexico's name, the time within which Dunn-Gross must appear and defend, the Clerk of the Court's signature, and the District of New Mexico's seal; and (ii) whether Demente's settlement with Defendants Victoria Dilucente and Anthony Dilucente precludes Demente's claims under the Unfair Insurance Practice Act ("UIPA"), N.M. Stat. Ann. §§ 59a-16-1 to 30, against GEICO Insurance.  The Court concludes that Demente's summons on Dunn-Gross was defective under rule 4(a) of the Federal Rules of Civil Procedure.  Nevertheless, the Court, in its discretion, may grant a party additional time to effect proper service and the Court

does so here.  The Court also concludes that, under <u>Hovet v. Allstate Ins. Co.</u>, 2004-NMSC-010, ¶ 26, 89 P.3d 69, 76-77, Demente's UIPA claim is precluded.  The Court, therefore, grants the MTD.

## <u>FACTUAL BACKGROUND</u>

The Court takes the facts from the Complaint for Damages Resulting from Personal Injury, Insurance Bad Faith, Violations of the New Mexico Unfair Trade Practices Act and Punitive Damages, filed May 13, 2016, in <u>Demente v. Dilucente</u>, D-1329-CV-2016-00743, (Thirteenth Judicial District Court, County of Sandoval, State of New Mexico), filed in federal court on March 8, 2017 (Doc. 1)("Complaint").  As the Court must, it accepts the Complaint's factual allegations as true for the purposes of a motion to dismiss.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The Court may also consider facts judicially noticed on a motion to dismiss without converting the motion into one for summary judgment.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 322 (2007)("[C]ourts must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice.");  <u>S.E.C. v. Goldstone</u>, 952 F. Supp. 2d 1060, 1191 (D.N.M. 2013)(Browning, J.).

On August 7, 2014, Demente was driving his vehicle in Rio Rancho, New Mexico.  <u>See</u> Complaint ¶ 6, at 2.  As he approached NM 528 from Sara Road, the intersection's light changed from green to yellow.  <u>See</u> Complaint ¶ 7, at 2.  Demente attempted to clear the intersection before the light turned red, but, before he could, A. Dilucente turned his 1993 Ford vehicle in front of Demente.  <u>See</u> Complaint ¶¶ 3, 8, at 1-2.  The two cars collided.  <u>See</u> Complaint ¶ 8, at 2. At the scene, A. Dilucente accepted responsibility for driver inattention and failure to yield the right of way.  <u>See</u> Complaint ¶ 10, at 2.

Subsequently, Demente attempted several times to resolve an insurance claim against V. Dilucente -- the 1993 Ford vehicle's owner.  See Complaint ¶¶ 2, 12, at 1-2. GEICO Insurance -- V. Dilucente's insurance provider -- covers $100,000.00 per occurrence in property damage and bodily injury for an accident involving V. Dilucente's vehicle.  See Complaint ¶ 22, at 4. GEICO Insurance made several different requests for Demente's medical records and for other information to evaluate Demente's claim.  See Complaint ¶ 13, 23 at 3-4.  Demente promptly and accurately responded to each GEICO Insurance request.  See Complaint ¶ 13, at 3.

## PROCEDURAL BACKGROUND

Demente filed his complaint in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico.  See Complaint ¶ 1, at 1.  Demente sued the Dilucentes for negligence, and he sued GEICO Insurance and its agent, Dunn-Gross, under the UIPA.  See Complaint ¶¶ 17-24, at 3-5.[1]  GEICO Insurance moved to bifurcate the action and stay the suit as to it pursuant to Martinez v. Reid, 2002-NMSC-015, ¶ 29, 46 P.3d 1237, 1244.  See Defendant Geico General Insurance Company's Unopposed Motion to Bifurcate and Stay, filed August 24, 2016, in Demente v. Dilucente, D-1329-CV-2016-00743 (Thirteenth Judicial District Court, County of Sandoval, State of New Mexico), filed in federal court on April 5, 2017 (Doc. 11)("Stay and Bifurcation Motion").  The state court granted the Stay and Bifurcation Motion which would remain in effect until the underlying negligence cause of action against the Dilucentes was resolved.  See Order Granting Defendant Geico General Insurance Company's Unopposed Motion to Bifurcate and Stay, filed September 7, 2016, in Demente v. Dilucente, D-

---

[1]When listing his UIPA claim, Demente cites N.M. Stat. Ann. § 52-12-7(D)-(E) and not the UIPA.  See Complaint ¶ 24, at 4-5.   N.M. Stat. Ann. § 52-12-7(D)-(E) does not exist, however, and the Complaint quotes the UIPA.  See Complaint ¶ 23, at 4; N.M. Stat. Ann. § 59A-12-20.  Demente, moreover, cites the UIPA when responding to the MTD and treats his claim as a UIPA claim.  See MTD Response at 5.  The Court, therefore, concludes that Demente alleges a UIPA claim.

1329-CV-2016-00743 (Thirteenth Judicial District Court, County of Sandoval, State of New Mexico), filed in federal court on April 5, 2017 (Doc. 11).

Dunn-Gross subsequently moved to dismiss Demente's claim for insufficiency of service of process. See Defendant Derica Dunn-Gross's Motion to Dismiss for Insufficiency of Service of Process, filed November 14, 2016, in Demente v. Dilucente, D-1329-CV-2016-00743 (Thirteenth Judicial District Court, County of Sandoval, State of New Mexico), filed in federal court on April 5, 2017 (Doc. 11)("Dunn-Gross MTD"). Dunn-Gross argues that, under the New Mexico Rules of Civil Procedure, Demente failed to properly serve her, because: (i) Demente did not serve her at a location where she was found after she had refused to accept service personally; (ii) Demente did not serve her at her home; (iii) Demente did not mail her a copy of the summons and complaint via first class mail to her home or to her workplace; and (iv) Demente's attempt to serve her through an executive secretary at GEICO Insurance was insufficient, because GEICO Insurance's executive secretary was not authorized to accept service on Dunn-Gross' behalf. See Dunn-Gross MTD at 3.

After Dunn-Gross filed the Dunn-Gross MTD, Demente settled his negligence claims against the Dilucentes. See MTD ¶ 6, at 2. The state court dismissed those claims with prejudice, but left unresolved those "claims filed against Geico General Insurance Company in relation to . . . insurance bad faith, unfair trade practices, unfair insurance practices, and punitive damages." Stipulated Order of Partial Dismissal With Prejudice at 1, filed February 24, 2017, in Demente v. Dilucente, D-1329-CV-2016-00743 (Thirteenth Judicial District Court, County of Sandoval, State of New Mexico), filed in federal court on April 5, 2017 (Doc. 11)("State

Order"). GEICO Insurance subsequently removed the case to federal court. <u>See</u> Notice of

Removal at 1, filed March 8, 2017 (Doc. 1)("Notice of Removal").[2]

### 1. **<u>Service of Process MTD.</u>**

Dunn-Gross argues that Demente's attempt to serve her after removal is defective, so the

Court lacks personal jurisdiction over her. <u>See</u> Service of Process MTD at 3. She contends that

the summons is defective in five ways. <u>See</u> Service of Process MTD at 3-4. First, the summons

did not contain the federal court's name. <u>See</u> Service of Process MTD at 3-4 (citing

Fed. R. Civ. P. 4(a)(1)(A); Fed. R. Civ. P. 12(b)(4)). Second, the summons does not refer to the

---

[2]GEICO Insurance removed on the basis of diversity jurisdiction. <u>See</u> Notice of Removal at 1. The Court notes, however, that the Notice of Removal does not allege Dunn-Gross' citizenship. <u>See</u> Notice of Removal ¶ 7, at 2. GEICO Insurance implies that it need not demonstrate Dunn-Gross' citizenship for diversity purposes, because she has not received proper service, so she is no longer a party. <u>See</u> Notice of Removal ¶ 11, at 2 ("As Defendant has accepted service and is the only remaining Defendant in the matter. . .")。As an initial matter, that a defendant has moved to dismiss for lack of proper service does not mean that the defendant is not a party for diversity jurisdiction purposes. Rule 12(b)(4)'s language demonstrates that only a party may move for insufficient process. <u>See</u> Fed. R. Civ. P. 12(b)(4)("[A] party may assert the following defenses by motion: . . . insufficient process"). Thus, Dunn-Gross is and remains a party until the Court dismisses her as a party. Moreover, as explained below, the Court does not dismiss Dunn-Gross as a party for lack of proper service. Accordingly, GEICO Insurance, as the moving party, must demonstrate that 28 U.S.C. § 1332(a) is satisfied. <u>See</u> <u>Middleton v. Stephenson</u>, 749 F.3d 1197, 1200 (10th Cir. 2014).

The Court notes that the parties have not contested diversity. The Court also notes that the Complaint alleges that Dunn-Gross is a resident of California. <u>See</u> Complaint ¶ 5, at 2. Such an allegation, however, does not satisfy the diversity jurisdiction requirements absent additional evidence. <u>See</u> <u>Siloam Springs Hotel, LLC v. Century Sur. Co.</u>, 781 F.3d 1233, 1238 (10th Cir. 2015). Although Dunn-Gross return of service documentation suggests that Dunn-Gross residence may be in Texas, <u>see</u> Return at 1-3, filed May 16, 2017 (Doc. 17-8), the Court cannot consider that evidence for diversity jurisdiction purposes either, <u>U.S. for Use & Benefit of General Rock & Sand Corporation v. Chuska Development Corporation</u>, 55 F.3d 1491, 1496 (10th Cir. 1995)("[J]urisdiction must be determined from the face of the pleading and not from returns of service of process or lack thereof.").

As such, the Court will not enter final judgment until it is satisfied that it has subject-matter jurisdiction. The Court orders, thus, that, within ten days of the date of this Memorandum Opinion and Order, GEICO Insurance shall show cause why the Court should not remand this action to the Thirteenth Judicial District, County of Sandoval, State of New Mexico, for lack of jurisdiction.

Federal Rules of Civil Procedure.  <u>See</u> Service of Process MTD at 4.  Third, it does not contain the time that Dunn-Gross needs to appear to defend herself.  <u>See</u> Service of Process MTD at 4.  Fourth, the summons does not bear the District of New Mexico's seal.  <u>See</u> Service of Process MTD at 4.  Fifth, and finally, the Clerk of the Court did not sign the summons.  <u>See</u> Service of Process MTD at 4.

Dunn-Gross also argues that the Court should dismiss the Complaint, because Dunn-Gross was not served within ninety days of the Complaint's filing.  <u>See</u> Service of Process MTD at 4 (citing Fed. R. Civ. P. 4(m)).  According to Dunn-Gross, Demente first attempted to serve Dunn-Gross five months after he filed the Complaint -- albeit, while the Complaint was pending in state court -- and then attempted to serve Dunn-Gross once the case was removed to federal court -- eleven months after he filed his Complaint.  <u>See</u> Service of Process MTD at 4.  Dunn-Gross concludes that Demente has not shown good cause for his delay in serving Dunn-Gross, so the Court should dismiss the Complaint.  <u>See</u> Service of Process MTD at 4-5.

**2.      MTD.**

GEICO Insurance argues that the Court should dismiss the UIPA claims, because, under <u>Hovet v. Allstate</u>, 2004-NMSC-010, ¶ 26, 89 P.3d 69, 76-77, a third party claimant does not have a cause of action under N.M. Stat. Ann. 59A-16-20 "unless and until there has been a judicial determination of the insured's fault."  MTD at 4.  According to GEICO Insurance, <u>Hovet v. Allstate</u> precludes Demente's claim, because "the parties settled."  MTD at 4 (citing <u>Hovet v. Allstate</u>, 2004-NMSC-010, ¶ 26, 89 P.3d at 76-77).  Moreover, according to GEICO Insurance, the claim is precluded, because Demente stipulated to dismissal of those claims before a judicial determination of A. Dilucente's fault.  <u>See</u> MTD at 5.

3. **MTD Response**.

Demente responds to the MTD.  <u>See</u> Plaintiff's Response to Defendant's Geico's Motion to Dismiss with Prejudice Under Rule 12(b) and Request that Defendant be Compelled to Comply with the Terms of the Order it Submitted on September 7, 2016 for Bifurcation and Stay in the Thirteenth Judicial District Court (Document No. 13) at 1, filed May 12, 2017 (Doc. 15)("MTD Response").   Demente argues that GEICO Insurance is liable under N.M. Stat. Ann. § 59A-16-20, which requires insurers to "attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." MTD Response at 5 (citing N.M. Stat. Ann. § 59A-16-20(E)).  Demente contends that he has a statutory right to sue for damages if an insurer violates N.M. Stat. Ann. § 59A-16-20(E).  <u>See</u> MTD Response at 5-6 (citing N.M. Stat. Ann. § 59A-16-30).   Demente adds that these laws' purposes are to "protect[] innocent accident victims from financial hardship."  MTD Response at 7-8 (citing <u>Estep v. State Farm Mutual Automobile Insurance Co.</u>, 1985-NMSC-069, ¶ 17, 703 P.2d 882, 887).

Demente concedes that a "third-party claimant will not even have an action under Section 59A-16-20(E), unless and until there has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action."  MTD Response at 9.  He argues, however, that the Court should enforce GEICO Insurance's Stay and Bifurcation motion. <u>See</u> MTD Response at 10.  Demente argues that, by enforcing that Stay and Bifurcation motion, GEICO Insurance will remain liable under N.M. Stat. Ann. § 59A-16-20(E).  <u>See</u> MTD Response at 10-12.  Demente concludes that GEICO Insurance's attorney should be sanctioned or, at least, "chastised" for their "frivolous defense."  MTD Response at 12.

4. **Service of Process MTD Response**.

Demente also responds to Dunn-Gross' Service of Process MTD. See Plaintiff's Response to Defendant Dunn-Gross' Motion to Dismiss for Insufficient Process (Document No. 12), filed May 16, 2017 (Doc. 17)("Service of Process MTD Response"). Demente argues that Dunn-Gross was aware of the lawsuit "as early as March, 2016," and was served not once, but four different times before GEICO Insurance removed the case to federal court. Service of Process MTD Response at 1. He argues that the process served on Dunn-Gross satisfies the New Mexico Rules of Civil Procedure. See Service of Process Response at 5 (citing N.M. Rules Ann. 1-004). First, he argues that process was proper, because it included the court's name, where he brought the action, the county, the docket number, the names of the parties, and the names of the person to whom process is directed. See Service of Process Response at 5 (citing N.M. Rules Ann. 1-004(A)-(B)). Second, he argues that service was made by mail and in person upon someone who was authorized to accept service. See Service of Process Response at 5. Third, Demente argues that he served Dunn-Gross several times "at her usual place of abode." Service of Process MTD Response at 6. He contends that, because Dunn-Gross has a "mobile lifestyle and can be found in multiple locations," serving her in many locations satisfies New Mexico's service of process rules. Service of Process MTD Response at 6. Demente concludes that Dunn-Gross "has been dodging service," and he asks the Court to deny the Service of Process MTD and award fees. Service of Process MTD Response at 6.

5. **MTD Reply**.

GEICO Insurance replies. See Reply in Support of Motion to Dismiss with Prejudice Under Rule 12(b)(6), filed May 23, 2017 (Doc. 18)("MTD Reply"). It reiterates its argument that Demente's UIPA claims fail, because there was no judicial determination of fault in the

underlying negligence case against the Dilucentes.  See Reply at 2-4.  GEICO Insurance also argues that its payment of the entire available policy limit does not amount to a judicial fault determination.  See Reply at 5.  It concludes that Hovet v. Allstate Inc. Co., 2004-NMSC-010, ¶ 26 89 P.3d 69, 76-77 dictates that the Court should dismiss the Complaint.  See Reply at 6.

**6.  Service of Process Reply**.

Dunn-Gross replies.  See Defendant Derica Dunn-Gross' Reply in Support of Her Second Motion to Dismiss for Insufficient Process, filed June 9, 2017 (Doc. 20)("Service of Process Reply").  Dunn-Gross argues that Demente did not respond to any of her arguments.  See Service of Process Reply at 1.  She contends that there is no dispute that Demente attempted to serve her on March 31, 2017, but that the summons did not comply with the Federal Rules of Civil Procedure.  See Service of Process Reply at 1-2.  She adds that Demente did not argue that there was good cause for an extension under rule 4(m), so the Court should not allow Demente to amend his summons.  See Service of Process Reply at 2-3.  Dunn-Gross concludes that, for the foregoing reasons, the Court should dismiss Demente's Complaint.  See Service of Process Reply at 3.

**7.      The Hearing**.

The Court held a hearing.  See Draft Transcript of Motion Proceedings (taken July 27, 2017)("Tr.").[3]  Dunn-Gross first argued that service on her was improper.  See Tr. at 3:5-12 (Lewis).  She argued that, while the case was still pending in state court, service "was attempted at [Dunn-Gross'] place of employment in Richardson, Texas," Tr. at 3:10-11 (Lewis), and, in response to that service, Dunn-Gross filed a motion "point[ing] out the defects" in service, Tr. at 3:18-19 (Lewis).  According to Dunn-Gross, the New Mexico rules allow for service of process

---

[3]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

on a person's place of employment, "but only after two other attempts or kinds of service have been attempted." Tr. at 3:24-4:3 (Lewis). Dunn-Gross then argues that the service attempted at her place of employment was also defective, because it was served on a Laura Hernandez -- a GEICO Insurance executive secretary -- who was not authorized to accept service for Dunn-Gross; according to Dunn-Gross, Hernandez told the process server that she was not authorized to accept for Dunn-Gross. <u>See</u> Tr. at 4:11-24 (Lewis).

Dunn-Gross also argued that the attempt to serve her after the case was removed to federal court is also defective. <u>See</u> Tr. at 5:11-13 (Lewis). Dunn-Gross conceded that she was served the second time at her home, <u>see</u> Tr. at 5:10-11 (Lewis), but contended that this service was defective, because the summons did not "put her on notice in any way, shape, or form that the matter is pending in this court," Tr. at 6:1-3 (Lewis). Dunn-Gross pressed, however, that "notice is not simply the test. Because that's essentially what plaintiff argues in the response." Tr. at 6:5-7 (Lewis). Instead, Dunn-Gross argued, "technical compliance with rule 4 is required." Tr. at 6:8-9 (Lewis). Dunn-Gross also contended that the service of process' timing is defective, <u>see</u> Tr. at 7:11-13 (Lewis), but she conceded that "maybe the removal complicates that somewhat," Tr. at 7:13-14 (Lewis).

Despite those arguments, Dunn-Gross conceded that "the court[] has discretion to give plaintiff a time period in which to effect proper service," Tr. at 10:5-7 (Lewis), and agreed that she did not have an issue with the Court setting a time for Demente to serve Dunn-Gross, <u>see</u> Tr. at 10:16-11:1 (Lewis)("[If] the court in its discretion wants to give a reasonable time period for them to effect proper service, . . . that's certainly allowable and I wouldn't object to that."). Dunn-Gross suggested twenty or twenty-one days as a reasonable time frame. <u>See</u> Tr. at 11:5-7 (Lewis).

Demente asserted that service of process was properly executed, but did not see "any reason to waste more time on this." Tr. at 11:21-22 (Lyle). Demente proposed a sixty day window to re-execute proper service. See Tr. at 11:25-12:1 (Lyle). The Court, accordingly gave the "plaintiff 60 days" to properly serve Dunn-Gross. Tr. at 13:15-17 (Court).

GEICO Insurance then argued the MTD. See Tr. at 14:5 (Singer). It reiterated its argument that the Court should dismiss Demente's UIPA claim, because "plaintiff has failed to obtain a judicial determination of liability." Tr. at 14:8-10 (Singer). GEICO Insurance contends that the State Order dismissing Demente's negligence claims against the Dilucentes did not "indicate[] that a determination of liability or fault had been reached." Tr. at 15:12-15 (Singer). According to GEICO Insurance, Demente's "claim did not become ripe nor will they ever do so because plaintiff chose to settle rather than litigate his claims." Tr. at 16:1-3 (Singer). Dunn-Gross added that, although she had not yet been served, "as a practical effect, your ruling on this would have the same [ef]fect on her." Tr. at 18:25-19:3 (Lewis).

The Court asked whether there was "any way to settle with a judicial determination or do you have to go to a jury trial." Tr. at 22:8-10 (Court). Dunn-Gross mused that it was "conceivable," but expressed that she is not sure why an "insurance company would agree to do that." Tr. at 22:13-16 (Lewis). She argued that an insurance company's motivation for settling would be to "avoid this very kind of claim." Tr. at 22:16-20 (Lewis). She argued that, for the Stay and Bifurcation Motion to have the effect of keeping the UIPA claims alive, the State Order dismissing the negligence claims would need explicit language to that effect. See Tr. at 23:16-24:1(Lewis).

Demente rejoined that "[w]hat makes this situation unique is that GEICO . . . set the rules as to how things would happen. GEICO . . . drafted the orders that were approved in the state

district court." Tr. at 26:4-9 (Lyle). He contended that this situation is "not addressed in any New Mexico case law," and, therefore, that New Mexico precedent does not bind the Court. Tr. at 26:10-13. According to Demente, GEICO Insurance's low settlement offer is exactly why the "Insurance Practices Act" exists. Tr. at 29:7-8 (Lyle). Demente also argued that the Court could hold an evidentiary hearing on whether there was fault, so that the claims could proceed against GEICO Insurance. See Tr. at 29:21-30:8 (Lyle). Demente conceded again, as he did in his MTD Response, see MTD Response at 9, that there must be a judicial determination of fault before a plaintiff may proceed on an UIPA claim, see Tr. at 30:18 (Lyle), but reiterated that GEICO Insurance's control over the State Order dismissing Demente's claims allows Demente to proceed with his UIPA claim, see Tr. at 30:21-31:5 (Lyle). Demente also argued that New Mexico caselaw does not bind the Court, because GEICO Insurance had settled for the policy limits. See Tr. 33:13-18 (Lyle). Responding to whether the Court should dismiss Dunn-Gross on the same grounds if the Court dismisses GEICO Insurance, Demente noted that "it would seem to make se[nse], but there may be some other considerations." Tr. at 41:15-16 (Lyle). The Court concluded by signaling its inclination to dismiss the UIPA claims. See Tr. at 43:2-4 (Court).

## LAW REGARDING RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The Complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in

the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. at 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is

insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Gallegos v. Bernalillo Cty. Board of Cty. Comm'rs, __ F. Supp. 3d __, 2017 WL 4402422, at *9 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of America, Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd. 551 U.S. at 322. See also Brokers' Choice of America, Inc. v. NBC Universal, Inc., 861 F.3d at 1103 (holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their

accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished).[4] In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the Tenth Circuit analogized to a statute of

_____

[4]Nard v. City of Okla. City is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Nard v. City of Okla. City, Smyers v. County of Atchison, Kan., Palzer v. Cox Oklahoma Telecom, LLC, and Douglas v. Norton have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes statements from defendants in a complaint for the purpose of refuting the statements the Court cannot rely on documents the defendants attach to a motion to dismiss which contain their un-redacted statements. See Mocek v. City of Albuquerque, No. Civ. 11-1009, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.). The Court reasoned that the statements were neither incorporated by reference nor central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack their reliability and truthfulness. See 2013 WL 312881, at *50-51. The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired. See Great Am. Co. v. Crabtree, No. 11-1129, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.). The Court determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23; Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which plaintiffs refer in their complaint, and which is central to whether the plaintiffs' adequately alleged a loss, falls within an exception to the general rule, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment.    See Genesee Cty. Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Trust 2006–3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute"); S.E.C. v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, electronic mail transmissions referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge).

## LAW REGARDING JUDICIAL NOTICE OF DOCUMENTS WHEN RULING ON A MOTION TO DISMISS

Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" facts that fall into one of two categories: (i) facts that are "generally known within the territorial jurisdiction of the trial court"; or (ii) facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (f). "Adjudicative facts are simply the facts of the particular case."    United States v. Wolny, 133 F.3d 758, 764 (10th Cir. 1998)(quoting Advisory Committee Notes to rule 201).   A court has discretion to take judicial notice of such facts, regardless whether requested.    See Fed. R. Evid. 201(c). On the other hand, if a party

requests that the court take judicial notice of certain facts, and supplies the necessary information to the court, judicial notice is mandatory.  See Fed. R. Evid. 201(d).  Also, if the parties timely request an opportunity to be heard, the Court must grant such an opportunity "as to the propriety of taking judicial notice and the tenor of the matter noticed."  Fed. R. Evid. 201(e).  That judicial notice may be taken during any stage of the judicial proceeding includes the motion to dismiss stage.  See 21 B C. Wright & K. Graham, Jr., Fed. Prac. & Proc. Evid. § 5110, at 294 & n.17 (2d ed. 2005).  Moreover, while ordinarily a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, see Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, see Duprey v. Twelfth Judicial Dist. Court, No. 08–0756, 2009 WL 2482171, at *7 (D.N.M. July 27, 2009)(Browning, J.)(citing Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)).  Also, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by, McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  The documents judicially noticed, however, should not be considered for the truth of the matters asserted therein.  See Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  The Court has previously judicially noticed news publications and public filings with the Securities and Exchange Commission.  See S.E.C. v. Goldstone, 952 F. Supp. 2d at 1219-20; In re Thornburg Mortg., Inc. Securities Litig., 2009 WL 5851089, at *3-4.   See also Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, __ F. Supp. 3d __, 2017 WL 4402422, at *18-19 (D.N.M. 2017)(Browning, J.)(ruling that the Court may take judicial notice of state court orders); A.M ex rel. Youngers v. New Mexico Dep't of Health, 117 F. Supp. 3d 1220, 1232 n.6 (D.N.M. 2015)(Browning, J.).

# LAW REGARDING SERVICE OF PROCESS

Under rule 4(a) the contents of a summons must include:

(A)     name the court and the parties;

(B)     be directed to the defendant;

(C)     state the name and address of the plaintiff's attorney or -- if unrepresented -- of the plaintiff;

(D)     state the time within which the defendant must appear and defend;

(E)     notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

(F)     be signed by the clerk; and

(G)     bear the court's seal.

Fed. R. Civ. P. 4(a)(1)(A)-(G)

Rule 4(m) provides:

If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specific time. But, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The burden of establishing service's validity is on the plaintiff. See F.D.I.C. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992). In 1993, Congress amended former rule 4(m) and "broaden[ed] the district court's discretion [to permit untimely service of process] by allowing it to extend the time for service even when the plaintiff has not shown good cause." Espinoza v. United States, 52 F.3d 838, 840-41 (10th Cir. 1995).

"A district court abuses its discretion [in deciding whether to dismiss a case for untimely service of process] if its decision is arbitrary, capricious, or whimsical." Smyers v. County of

Atchison, Kan., 336 F. App'x 819, 820-21 (10th Cir. 2009)(unpublished).  Further, "[a] district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion."  ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

Thus, Tenth Circuit district courts now employs a two-step analysis for determining whether an extension of time should be granted when a summons and complaint has not been timely served.  First, the plaintiff is entitled to a mandatory extension of time if the plaintiff can demonstrate good cause for failing to timely effect service.  See Espinoza v. United States, 52 F.3d at 841.  "The good cause provision of Rule 4[(m)] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994).  "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice."  In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996).  Avoiding or evading service of process, however, may constitute "good cause," requiring a mandatory extension of time in which to serve.  Hendry v. Schneider, 116 F.3d 446, 449 (10th Cir. 1997).

Second, if the plaintiff fails to show good cause, the court still must exercise its discretion, and either dismiss the case without prejudice or extend the time for service.  See Espinoza v. United States, 52 F.3d at 842. In making its determination whether to grant a permissive extension, the Court may consider several factors, including whether the applicable statute of limitations would bar the re-filed action and other policy considerations.  See Espinoza v. United States, 52 F.3d at 841-42.

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed [90] days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.  Such relief

> formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Fed. R. Civ. P. 4(m) Advisory Committee's note (1993 Amendment). The Court has previously granted a permissive extension of time to effect service of process when the party to be served had a copy of the complaint, had actual notice of the lawsuit, had attempted to avoid proper service, and was not prejudiced by late service of the original complaint. See Salazar v. City of Albuquerque, 278 F.R.D. 623, 628 (D.N.M. 2011)(Browning, J.). See also Mata v. Anderson, 760 F. Supp. 2d 1068, 1098 (D.N.M. 2009)(Browning, J.)(ruling that it would extend the time for service of process, because "[t]he delay was not inordinate, prejudicial, or intentional, and the First Amended Complaint has been served.").

## LAW REGARDING THE UIPA

The New Mexico Legislature passed the UIPA, N.M. Stat. Ann. § 59A-16-20, "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices." N.M. Stat. Ann. § 59A-16-2. N.M. Stat. Ann. § 59A-16-4 proscribes certain misrepresentations that relate to insurance transactions, including "misrepresent[ing] the benefits, advantages, conditions or terms of any policy." N.M. Stat. Ann. § 59A-16-4. N.M. Stat. Ann. § 59A-16-5 forbids "untrue, deceptive or misleading" advertisements that relate to insurance. N.M. Stat. Ann. § 59A-16-5. N.M. Stat. Ann. § 59A-16-8 makes actionable certain falsifications of insurance records and the circulation of "any false statement of the financial condition of an insurer." Various provisions in the UIPA proscribe discrimination in relation to insurance transactions. See, e.g., N.M. Stat. Ann. §§ 59A-16-11 to - 13.2. N.M. Stat. Ann. § 59A-16-19 prohibits anti-competitive insurance practices "resulting or tending to result in

unreasonable restraint of, or monopoly in, the business of insurance." N.M. Stat. Ann. § 59A-16-19.

The UIPA imposes liability for a laundry list of unfair insurance claims practices, including the following:

A.    misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.    failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.    failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.    attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.    attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J.    failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.  making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.  delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.  failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.  failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O.  violating a provision of the Domestic Abuse Insurance Protection Act.

N.M. Stat. Ann. § 59A-16-20.  N.M. Stat. Ann. § 59A-16-30 provides a cause of action for UIPA

violations and allows attorney's fees for prevailing parties.  See N.M. Stat. Ann. § 59A-16-30.

The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, has

concluded that a plaintiff failed to plausibly plead a UIPA claim:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged. At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20.  Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits. As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith.  Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d 1215, 1227 (D.N.M.

2001)(Black, J.)(footnote omitted)(citations omitted).  The Court has previously found that a

plaintiff failed to state a claim under rule 12(b)(6) when the complaint did not contain even "a

formulaic recitation of the elements of a cause of action" under the UIPA.  Estate of Gonzales v.

AAA Life Ins. Co., No. CIV 11-0486, 2012 WL 1132332, at *7 (D.N.M. March 28,

2012)(Browning, J.)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court

sitting in diversity applies "state law with the objective of obtaining the result that would be

reached in state court."  Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007).

Accord Mem. Hosp. v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007).  The

Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme

Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district

court] must . . . predict how the Supreme Court of New Mexico would [rule]."  Guidance

Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M.

2010)(Browning, J.).  "Just as a court engaging in statutory interpretation must always begin

with the statute's text, a court formulating an Erie prediction should look first to the words of the

state supreme court."  Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M.

2015)(Browning, J.).[5]  If the Court finds only an opinion from the Court of Appeals of New

---

[5]In performing its Erie-mandated duty to predict what a state supreme court would do if
faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may
sometimes contradict the state supreme court's own precedent if the federal court concludes that
the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson
Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1247 n.30.  Courts should,
obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent;
even if the prediction turns out to be correct, such predictions produce disparate results between

Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[6] The Court may also rely on Tenth Circuit

---

cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times. See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17. In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[6]The Supreme Court of the United States of America has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more

decisions interpreting New Mexico law.  See Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1243 & n.30.[7]  Ultimately, "the Court's task is to predict what the state

convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

. . . We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

. . . .

The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted). The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Moore's")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

[7]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges.  If the Court

adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court. This result frustrates the purpose of <u>Erie</u>, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum. This consideration pulls the Court toward according Tenth Circuit precedent less weight, and according state court decisions issued in the ensuing years more weight. On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation. Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law. This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least provides consistency at the federal level, so long as federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other. In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges. Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system. More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' decisions are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind state law developments -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state

encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judge decisions of state law with no controlling state Supreme Court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); See Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying state law with no governing state Supreme Court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly-erroneous standard or, the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that *x* is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is *x*. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

The purpose of Erie is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless

whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This may not be the most precise formulation if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Laboratories v. Granite State Ins. Co., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree. In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation in order to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [v. *Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera[, Inc. v. Forma Scientific, Inc.*, 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest court*.'")(emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the Erie doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." Moore's § 124.22[4] (citing

supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666. Accord Mosley v.

Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d

1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at

665-66).

## ANALYSIS

The Court concludes that Demente's summons to Dunn-Gross is defective, because it

does not bear the district court's name and seal, the Clerk of Court's signature, and the time

within which Dunn-Gross must appear and defend herself. Although the summons is defective,

the Court, in its discretion and pursuant to the parties' agreement, grants Demente sixty days to

properly serve Dunn-Gross. The Court also concludes that, because Demente settled his

negligence claims against the Dilucentes with no judicial fault determination, Demente has no

UIPA cause of action against GEICO Insurance or Dunn-Gross.[8] The Court therefore dismisses

his UIPA claim.

## I.     DEMENTE'S SERVICE OF PROCESS ON DUNN-GROSS IS DEFECTIVE, BUT THE COURT GRANTS HIM AN ADDITIONAL SIXTY DAYS TO PERFECT IT.

Demente's service of process on Dunn-Gross was not perfected before removal, nor was

it proper after removal. "Where service is effected prior to removal to federal court, we look to

state law to determine if service was perfected." Palzer v. Cox Okla. Telecom, LLC, 671 F.

App'x 1026, 1028 (10th Cir. 2016)(unpublished). Under the New Mexico rules, service of

process on an individual's place of business is proper only if service of process has first been

---

State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)).
Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie.

[8]Although Dunn-Gross has not moved to dismiss on these grounds, the Court, after
reviewing the relevant caselaw, dismisses her sua sponte. See McKinney v. State of Okl., Dep't
of Human Services, 925 F.2d 363, 365 (10th Cir. 1991).

attempted on the individual personally and on the person's usual place of abode.  <u>See</u> N.M. Rules Ann. § 1-004(F)(3).  On information that Dunn-Gross could be served through the New Mexico State Superintendent of Insurance, Demente first attempted to serve Dunn-Gross through the Superintendent.  <u>See</u> Service of Process Response at 3.  After the Superintendent rejected service on Dunn-Gross' behalf, Demente next attempted to serve Dunn-Gross at two different GEICO Insurance offices.  <u>See</u> Service of Process Response at 3.  Demente did not serve Dunn-Gross personally, but another GEICO Insurance employee instead.  <u>See</u> Service of Process Response at 3; Return of Service at 1 (dated October 12, 2016), filed May 16, 2017 (Doc. 17-5).  Because Demente did not first attempt to serve Dunn-Gross at her usual place of abode before serving Dunn-Gross at her work through another GEICO Insurance employee, Demente did not properly perfect service of process under the New Mexico rules.  <u>See</u> N.M. Rules Ann. § 1-004(F)(3).

After the case had been removed to federal court, Demente attempted, one more time, to serve Dunn-Gross -- this time at her home.  <u>See</u> Service of Process Response at 4.  Because the case had been removed, Demente received a fresh chance at properly serving Dunn-Gross.  <u>See</u> 28 U.S.C. § 1448.

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court

28 U.S.C. § 1448.  Dunn-Gross contends that Demente's attempt to serve her after removal fails under rule 4(m), because Demente attempted service eleven months after he filed the original complaint.  <u>See</u> Service of Process MTD at 4; Fed. R. Civ. P. 4(m) (requiring service to occur within ninety days of the complaint).   Under 28 U.S.C. § 1448, however, Demente receives another ninety days to serve Dunn-Gross starting from the removal date.  <u>See</u> 28 U.S.C. § 1448;

Wallace v. Microsoft Corp., 596 F.3d 703, 706 (10th Cir. 2010)("Taken together, Mr. Wallace argues that, once his case was removed, he then had 120 days in which to effect service. We agree.").[9] Demente thus served Dunn-Gross within rule 4(m)'s time frame, because he served her on April 3, 2017, which is within ninety days of March 8, 2017 -- the removal date. See Removal Notice at 1; MTD Response at 4; Service of Process Return at 2 (dated April 3, 2017), filed May 16, 2017 (Doc. 17-8)("Service of Process Return").[10]

Although Demente served Dunn-Gross within rule 4(m)'s time frame, his summons is defective under rule 4(a). See Fed. R. Civ. P. 4(a). Rule 4(a) requires the summons to have the Court's name, the Clerk of the Court's signature, the Court's seal, and the time within which the defendant must appear and defend. See Fed. R. Civ. P. 4(a)(1)(A), (D), (F)-(G). Demente's summons does not satisfy those requirements. See Summons at 1, filed April 18, 2017 (Doc. 12-1)("Summons"). Instead, it appears as if Demente used the state-court summons as the federal-court summons. See Summons at 1-2. The Summons has the state court's name and seal, the state Clerk of Court's signature, and it does not state the time within which the Dunn-Gross must appear and defend. See Summons at 1-2. Such defects are not technical deficiencies that the Court may overlook, but instead render service of process defective. See Cloyd v. Arthur Anderson & Co., 151 F.R.D. 407, 409 (D. Utah 1993)(Winder, C.J.)(concluding that a summons lacking the Court's seal and the Clerk of Court's signature rendered the summons "void" and collecting cases). Thus, although Demente served Dunn-Gross within ninety days of removal,

---

[9]The 120-day period for service under rule 4(m) was amended to ninety days in 2015. See Fed. R. Civ. P. 4(m) (2015 amendment).

[10]The Service of Process Response asserts that Demente served Dunn-Gross on March 31, 2017, see MTD Response at 4 (citing Service of Process Return at 2), but the Service of Process Return is dated April 3, 2017, see Service of Process Return at 2. The Court will use the Service of Process Return date.

the service of process is defective, and Demente did not attempt to serve Dunn-Gross again before rule 4(m)'s ninety days elapsed.  <u>See</u> Service of Process Response at 4.

Although service of process is defective, the Court, in its discretion, may grant a party additional time to perfect that process, even without the party showing good cause.  <u>See</u> <u>Espinoza v. United States</u>, 52 F.3d at 840-41.  In making its determination whether to grant a permissive extension, the Court may consider several factors, including whether the applicable statute of limitations would bar the re-filed action and other policy considerations, and whether the party effecting service is representing herself pro se.  <u>See</u> <u>Espinoza v. United States</u>, 52 F.3d at 841-42.

The Court has previously granted a permissive extension of time to effect service of process when the party to be served had a copy of the complaint, had actual notice of the lawsuit, had attempted to avoid proper service, and was not prejudiced by late service of the original complaint.  <u>See</u> <u>Salazar v. City of Albuquerque</u>, 278 F.R.D. 623, 628 (D.N.M. 2011)(Browning, J.).  <u>See also</u> <u>Mata v. Anderson</u>, 760 F. Supp. 2d 1068, 1098 (D.N.M. 2009)(Browning, J.)(ruling that it would extend the time for service of process, because "[t]he delay was not inordinate, prejudicial, or intentional, and the First Amended Complaint has been served.").

Here, the Court grants Demente sixty days from July 27, 2017 -- the hearing date -- to properly effect service.  Dunn-Gross agreed that extending the time frame to effect service was appropriate, <u>see</u> Tr. at 10:16-11:1 (Lewis), and also agreed to a sixty day extension, <u>see</u> Tr. at 12:15 (Lewis).  The Court independently concludes that a permissive extension is appropriate for four reasons.  First, Dunn-Gross had notice of the lawsuit within rule 4(m)'s time limit.  Second, the sixty-day extension ultimately extends the time in which Demente had to effect service by

only 120 days total.  Third, and finally, Demente attempted service of process several times, but had some difficulty locating Dunn-Gross.  Fourth, Dunn-Gross does not oppose an extension. Accordingly, Demente has until September 25, 2017 to effect service of process.

## II.    THE COURT DISMISSES THE UIPA CLAIM, BECAUSE THE CASE SETTLED WITHOUT A JUDICIAL FAULT DETERMINATION.

The Court dismisses Demente's UIPA claims against GEICO Insurance and Dunn-Gross.

In relevant part, an insurer is liable under the UIPA for:

> B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
>
> C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;
>
> . . . .
>
> E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;
>
> . . . .
>
> M.    failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;
>
> N.    failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

N.M. Stat. Ann. § 59A-16-20(B)-(C), (E), (M)-(N).  An automobile accident victim does not have a cause of action against a tortfeasor's insurer "unless and until there has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action."  Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶ 26, 89 P.3d at 76-77. Moreover, "[t]hose electing to settle their claims without a judicial determination of liability waive any claims under the Insurance Code for unfair settlement practices."  Hovet v. Allstate

Ins. Co., 2004-NMSC-010, ¶ 26, 89 P.3d at 77.  The Supreme Court of New Mexico reasoned:

"If we were to allow a third-party claimant who settles to later bring a claim against the insurance company for not settling, we would needlessly encourage serial litigation and frustrate the policy reasons, like finality, that encourage settlement."  Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶ 26, 89 P.3d at 77.[11]  Since Hovet v. Allstate Ins. Co., the Supreme Court of New Mexico has tacitly re-approved its holding.  See Jolley v. Assoc. Electric & Gas Ins., 2010-NMSC-029, ¶¶ 18-19, 237 P.3d 738, 742-43.

---

[11]The Supreme Court of New Mexico's holding in Hovet v. Allstate Ins. Co. -- at first glance -- surprised the Court.  It, on an initial reading, appears conservative.  It is not at all intuitive that an insurance carrier should be able to negotiate in bad faith with a car accident victim, and then, on the eve of trial, settle, thereby insulating itself from the statutorily enacted remedy under the UIPA.  Most other jurisdictions, however, do not even recognize a third-party private cause of action against insurance carriers for bad-faith settlement negotiations and some do not recognize a private cause of action at all.  See, e.g., Moradi-Shalal v. Fireman's Fund Ins. Cos., 758 P.2d 58, 68 (Cal. 1988)(ruling that private parties do not have a cause of action against an insurer for bad-faith settlement practices); Yassin v. Certified Grocers of Illinois, Inc., 551 N.E.2d 1319, 1322 (Ill. 1990)("[T]he remedy embodied in section 155 of the Insurance Code does not extend to third parties."); Bates v. Allied Mut. Ins. Co., 467 N.W.2d 255, 258 (Iowa 1991); Herring v. Herring, 844 P.2d 487, 494 (Wyo. 1992); Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 150 (Tex. 1994)(ruling that third-party claimants do not have standing to sue insurers for bad-faith settlement practices); Tank v. State Farm Fire & Cas. Co., 715 P.2d 1133, 1140 (Wash. 1986).  But see Yanting Zhang v. Superior Court, 304 P.3d 163, 166 (Cal. 2013)(holding that insureds may sue insurers under California's Unfair Competition Law for conduct that would amount to a UIPA claim, notwithstanding Moradi-Shalal v. Fireman's Fund Ins. Cos.); State ex rel. State Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721, 725 (W.Va. 1994)(holding that third-party victims may sue insurance companies even without a judicial determination of fault).  A dominant rationale for such a holding is that the duty to bargain in good faith arises from a contractual relationship and such a relationship does not exist between a third-party victim and the tortfeasor's insurance company.  See Torres v. Nev. Direct Ins. Co., 353 P.3d 1203, 1211 (Nev. 2015)("Third-party claimants do not have a contractual relationship with insurers and thus have no standing to claim bad faith.").  Thus, absent an express statutory directive to the contrary, the courts have been hesitant to extend that cause of action to third-party victims.  See Torres v. Nev. Direct Ins. Co., 353 P.3d at 1211.  Given this backdrop, the Supreme Court of New Mexico's holding no longer appears so conservative, as it bucks the even more conservative trend to bar these claims entirely.

In this case, there was no judicial fault determination; the parties stipulated to dismissal of the negligence claims with prejudice. See State Order at 1 (dismissing with prejudice all claims against the Dilucentes "on the grounds that all matters in controversy by and between the parties have been resolved.").[12] Under Hovet v. Allstate Ins. Co., a victim of an automobile accident may not sue, under the UIPA, the tortfeasor's insurance company without a judicial fault determination. See 2004-NMSC-010, ¶ 26, 89 P.3d at 76-77. Demente is an automobile-accident victim, so he may not sue the Dilucente's insurance company -- GEICO Insurance -- because there has been no judicial fault determination.

Demente also has no UIPA cause of action against Dunn-Gross. The statute provides a cause of action against only insurers and their agents, see N.M. Stat. Ann. § 59A-16-30, and, thus, Dunn-Gross may be liable only as GEICO Insurance's agent. Hovet v. Allstate Ins. Co.'s fault-determination requirement applies equally to insurers as it does to their agents. Hovet v. Allstate Ins. Co, 2004-NMSC-010, ¶ 26, 89 P.3d at 404-05 ("Those electing to settle their claims without a judicial determination of liability waive any claims under the Insurance Code for unfair settlement practices.")(emphasis added). See also Tr. at 41:15-16 (Lyle)(conceding that the UIPA analysis is likely the same for GEICO Insurance and Dunn-Gross). Indeed, to hold insurance agents liable, but not the insurer, makes no sense in light of the Supreme Court of New Mexico's rationale that allowing such UIPA claims after settlement "would needlessly encourage

---

[12]The Court takes judicial notice of the State Order and its contents. See Fed. R. Evid. 201(b)(2); Pace v. Swerdlow, 519 F.3d 1067, 1072-73 (10th Cir. 2008)(ruling that a district court could take judicial notice of "state court documents"); Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, __ F. Supp. 3d __, 2017 WL 4402422, at *18-19 (ruling that the Court may take judicial notice of state court orders). The State Order and its contents are "readily determinable," Fed. R. Evid. 201(b)(2), because it was filed with the Court, see Notice of State Court Filing, filed April 5, 2017, (Doc. 11), and its source is one whose "accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), as the document bears the state district court's stamp and a district judge's signature, see State Order at 1-2. Also, no party disputes their authenticity.

serial litigation and frustrate the policy reasons, like finality, that encourage settlement."  Hovet v. Allstate Ins. Co, 2004-NMSC-010, ¶ 26, 89 P.3d at 405.  Although barred from suing the insurer, victims would be encouraged to pursue "serial litigation" against the insurer's agent, which, ultimately, targets the insurer's funds.  Hovet v. Allstate Ins. Co, 2004-NMSC-010, ¶ 26, 89 P.3d at 405.

Demente attempts to distinguish Hovet v. Allstate Ins. Co.'s fail.  First, he contends that, because GEICO Insurance exercised a great deal of control over drafting the motion staying and bifurcating the state proceedings, Hovet v. Allstate Ins. Co. does not bind the Court.  See Tr. at 26:4-5 (Lyle).  The Court notes that, although GEICO Insurance may have drafted the Stay and Bifurcation Motion, see Tr. at 26:6-9 (Lyle), Demente did not oppose that motion, see Stay and Bifurcation Motion at 1.  Notwithstanding that fact, the Court concludes that GEICO Insurance's control over that motion is immaterial.  The Supreme Court of New Mexico's language is unequivocal: "Those electing to settle their claims without a judicial determination of liability waive any claims under the Insurance Code for unfair settlement practices."  Hovet v. Allstate Ins. Co., 2004-NMSC-010, ¶ 26, 89 P.3d at 77.  Whether GEICO Insurance sought to stay the bad-faith claims until the underlying negligence claims were resolved does not bear on whether a settlement or a judicial determination of liability occurred.[13]

---

[13]To the extent that Demente's argument can be interpreted as one that GEICO Insurance's request for a bifurcation and stay waived any defense it had under Hovet v. Allstate Ins. Co., such an argument fails, because the Court cannot soundly interpret a request for a stay and bifurcation as a waiver of applicable defenses.

To the extent that Demente's position can be interpreted as judicial estoppel or equitable estoppel arguments, see Tr. at 29:12-18 (Lyle), the Court concludes that those arguments also fail.  For judicial estoppel to apply, GEICO Insurance must have assumed inconsistent positions in legal proceedings.  See Santa Fe Pacific Trust, Inc. v. City of Albuquerque, 2012-NMSC-028, ¶ 32, 285 P.3d 595, 604; Gallegos v. Pueblo of Tesuque, 2002-NMSC-012, ¶ 23, 46 P.3d 668, 677.  Judicial estoppel fails as a defense, because there is no evidence that GEICO Insurance took the position in front of a court that executing the settlement would allow the UIPA claim to

Second, Demente contends that the State Order lifting the stay and stating that the UIPA claims "remain" means just what it says -- the UIPA claims remain. Tr. at 27:9-10 (Lyle). See Tr. at 31:4-6 (Lyle)(arguing that the State Order "clearly contemplates continuation of the unfair trade practices claims, and says okay, now we can move forward with those"). The Court disagrees. That a claim "remains" does not mean that all defenses or arguments against that claim are invalid. Such a sweeping interpretation equates remain with meritorious. The State Order's entire text, moreover, suggests that the term "remains" does not even have the limited meaning that the settlement shall have no effect on the UIPA claim moving forward. Read in its entirety, the State Order dismisses "all claims" against the Dilucentes and GEICO insurance, except the UIPA claim. State Order at 1. Thus, the most plausible reading of "remains" is that the parties have stipulated to the dismissal of some claims, but not the UIPA claim.

---

move forward. See Santa Fe Pacific Trust, Inc. v. City of Albuquerque, 2012-NMSC-028, ¶ 32, 285 P.3d at 604 ("The purpose of the doctrine of judicial estoppel is to stop a party from playing fast and loose with the court during litigation. In this case, nothing in the record indicates that the City intentionally attempted to mislead the Court of Appeals. . . ."). The only potential representation to the New Mexico state court about the UIPA claims comes from the GEICO Insurance-drafted State Order, but there is no language in there about the settlement agreement or its potential impact on subsequent litigation. Additionally, as explained infra, the State Order's language that the UIPA claim "remains" cannot soundly be interpreted as a representation from GEICO Insurance that the settlement shall have no effect on the UIPA claim moving forward.

Equitable estoppel "precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his [or her] position in reliance on the former's misrepresentation or failure to disclose some material fact." Gallegos v. Pueblo of Tesuque, 2002-NMSC-012, ¶ 24, 46 P.3d at 677. (alterations in original). This defense is inapplicable, because at issue is not a misrepresentation or failure to disclose some material fact. Any misrepresentation or failure to disclose would be about the relevant law; namely, Hovet v. Allstate Ins. Co.. Demente, however, knew of Hovet v. Allstate Ins. Co. before he entered the settlement agreement. See Letter from James P. Lyle to Derica Dunn Gross at 1 (dated March 4, 2016), filed May 12, 2017 (Doc. 15-2)(citing Hovet v. Allstate Ins. Co. in a pre-litigation letter to GEICO Insurance). Thus, Demente cannot have relied on a misrepresentation, as he knew the law before heading into settlement negotiations. An argument premised on unilateral mistake would fail for similar reasons.

Third, he argues that Hovet v. Allstate Ins. Co. is inapplicable, because the parties settled for the full policy limit amount. See MTD Response at 10. Again, such a factual distinction does not surmount Hovet v. Allstate Ins. Co.'s clear language that a judicial determination of fault is required. Nevertheless, Demente persists that settling for the full policy amount is the legal equivalent to a judicial determination of fault. See Tr. at 33:9-12 (Lyle). Demente's settlement cannot be a judicial determination of fault, however, because no judge was involved in the settlement. Moreover, an insurance company can settle for the maximum policy amount for reasons unrelated to fault. For example, settling for the full policy amount might be less expensive than litigating the case to its completion; lawyers and other costs related to litigation are expensive.[14] The Court concludes, accordingly, that it should dismiss Demente's UIPA claim against GEICO Insurance and Dunn-Gross.[15]

**IT IS ORDERED** that: (i) Defendant Derica Dunn-Gross' Second Motion to Dismiss for Insufficient Process, filed April 18, 2017 (Doc. 12), is denied; and (ii) Defendant GEICO General Insurance Company's Motion to Dismiss with Prejudice Under Rule 12(b) and Memorandum in Support Thereof, filed April 21, 2017 (Doc. 13), is granted. Plaintiff James Demente has until September 25, 2017 to perfect service of process on Defendant Derica Dunn-

---

[14]Demente also contends that the Court should hold an evidentiary hearing and determine fault. See Tr. at 29:25-30:1. The statute outlines no such proceeding, see N.M. Stat. Ann. §§ 59a-16-1 to 30, nor could it find any Supreme Court of New Mexico approving of such a procedure. With no statute or court case endowing the Court with the power to hold an evidentiary proceeding to determine fault, the Court declines to hold one. Moreover, Demente's proposed rule would allow third-party claimants to settle the underlying negligence or tort claims and then pursue a judicial fault determination later, undermining Hovet v. Allstate Ins. Co.'s rule. It is also unclear whether the Court could make a determination without a jury, if either side wants one, and holding a trial to resolve a settled claim is exactly the type of excess litigation that Hovet v. Allstate Ins. Co. sought to avoid.

[15]Demente asks the Court to sanction or at least "chastise[]" GEICO Insurance for its "frivolous defense." MTD Response at 12. Because the Court concludes that GEICO Insurance's defense is meritorious, it declines to chastise or sanction GEICO Insurance.

Gross.  Demente's Unfair Insurance Practice Claims, N.M. Stat. Ann. §§ 59a-16-1 to 30, against

GEICO Insurance and Dunn-Gross are dismissed with prejudice.   GEICO Insurance shall also,

within ten days of the date of this Memorandum Opinion and Order, show cause why the Court

should not dismiss this case for lack of subject-matter jurisdiction.  See supra, at 5 n.2.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

James P. Lyle
Law Offices of James P. Lyle
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Donna L. Chapman
Jessica Singer
Chapman and Priest, P.C.
Albuquerque, New Mexico

    *Attorney for the Defendant GEICO General Insurance Co.*

Kathleen M. Mixon
Doughty, Alcaraz, & deGraauw PA
Albuquerque, New Mexico

    *Attorney for the Defendants Victoria Dilucente and Anthony Dilucente*

Daniel W. Lewis
Allen, Shepard, Lewis & Syra, P.A.
Albuquerque, New Mexico

    *Attorney for the Defendant Derica Dunn-Gross*